UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS HARRIS,

        Petitioner,

vs.

CLARK DUCART,[1]

        Respondent.

No. 2:16-cv-16-EFB

MEMORANDUM AND ORDER

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties in this action have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). ECF Nos. 7 & 8. Petitioner challenges convictions entered against him on August 29, 2011 in the Sacramento County Superior Court on three counts of second degree robbery pursuant to California Penal Code § 211 and three firearm enhancements pursuant to California Penal Code §12022.53(b). He argues that he is entitled to federal habeas relief because the trial court erred in admitting testimony regarding a computer aided dispatch log ("CAD") that linked petitioner to a car seen leaving one of the robberies for which he was convicted. Upon careful consideration of the

---

[1] As petitioner is now confined at Pelican Bay State Prison, *see* ECF No. 31, Clark Ducart, the Warden of Pelican Bay State Prison, is substituted as respondent pursuant to Fed. R. Civ. P. 25(d).

1

record and the applicable law, the court finds that petitioner's application for habeas corpus relief must be denied.

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual and procedural summary:

### Underlying Facts and Criminal Charges

In August 2010, robberies were committed at a Pizza Hut, a Metro PCS Store, and an International House of Pancakes (IHOP). The robberies at Pizza Hut and the IHOP were recorded on video tape. Following the robbery at the IHOP, a witness saw the robber get into the passenger side of a white Dodge Magnum.

While investigating these robberies, Detective Mike French reviewed a "computer aided dispatch" log (CAD log) from a 911 call made by Laretha Jackson, defendant's wife. The CAD log contained Jackson's allegation that defendant stole her white Dodge Magnum on August 29, 2010, the day after the IHOP robbery.

After reading about the possible connection between defendant and a white Dodge Magnum, Detective French looked at a picture of defendant; he thought defendant "looked similar" to the person who robbed the Pizza Hut and the IHOP. Thereafter, Detective French investigated defendant as a suspect in the robberies.

During that investigation, witnesses from each of the robberies identified defendant in a photographic line-up as the person who robbed their respective stores. After further investigation, defendant was arrested.

Defendant was charged with four counts of robbery (§ 211) and related gun use enhancements (§ 12022.53, subd. (b)). Jury trial began in May 2011, but ended in a mistrial on June 1, 2011. One count of robbery was then dismissed on the prosecution's own motion, and an amended information was filed charging defendant with three counts of robbery and related gun enhancements.

### Pretrial Motion to Exclude Evidence

A second trial began in August 2011 with motions in limine filed by the prosecution. Included in their motions was a motion to introduce the CAD log from Jackson's 911 call. There was no recording of the phone call but the CAD log was a summary, "kept in the normal course of business as a business record," according to the prosecutor. The prosecution was unable to subpoena Jackson to testify.

2

Defendant objected to the prosecution's motion, arguing the statements made by Jackson in the 911 call were hearsay that did not fall within any statutory exception to the hearsay rule. Defendant also argued Jackson's statements were factually irrelevant because Jackson accused defendant of stealing her white Dodge Magnum the day after the perpetrator was seen getting into a white Dodge Magnum outside the IHOP robbery. The trial court agreed with defendant and excluded the 911 call statements reflected in the CAD log.

Later, during trial, the prosecutor sought to introduce "simply the fact that [Detective French] reviewed a CAD call with regard to a white Dodge Magnum which had a potential suspect name of Dennis Harris, that [Detective French] then followed up on the description of Mr. Harris, or something to that effect." The prosecutor argued such evidence was relevant to show how Detective French came to focus his investigation on defendant. The prosecutor agreed she would "avoid" anything related to the details of Jackson's call. Defendant objected, arguing that by allowing the information, it would lead the jury to believe defendant had access to his wife's car at the time of the IHOP robbery, even though the CAD document reported the car had been stolen the following day.

Upon questioning by the trial court, the prosecutor told the court that independent evidence would be admitted connecting defendant to Jackson's car. The prosecutor would show that Jackson was the registered owner of a white Dodge Magnum and she was also defendant's wife (or ex-wife). The prosecutor also had evidence that defendant and Jackson were both in South Sacramento at the time of the IHOP robbery. From that evidence, the prosecutor argued that the jury could reasonably infer that defendant had access to Jackson's white Dodge Magnum at the time of the IHOP robbery.

The trial court agreed with the prosecution and ruled the proffered testimony admissible, saying, "the [P]eople seem to recognize, and it's certainly the Court's admonishment, that the witness is not to articulate the statements made by her or statements made to him regarding the possession of that car or the theft of that car, but, rather, one of the investigative tools or source of information was a CAD Log, the nature of the CAD Log in general terms and that from that, there was a connection, there was information within that [ ] would give rise to him conducting an additional investigation as to this particular person.

"The fact that [defendant]'s name has now become known to [law enforcement] does give context to how they then proceeded with their investigation, which would have been a far cry different than, as I said, just casting about with, you know, through some kind of random process. It clearly was not that. [¶] ... [¶] "There is no content being offered for the truth of the matter. That is the nature of the ... information [the prosecutor's] going to elicit."

/////

/////

3

**Trial Evidence**

At trial, Detective French testified that the white Dodge Magnum seen leaving the IHOP robbery was a "significant lead," the prosecutor then asked the following question: "Now, a couple of days later on the 30th of August, did you receive another CAD type printout which involved a call regarding a white Dodge Magnum and a connection between that vehicle and a person by the name of Dennis Harris?" Detective French replied, "Yes."

The trial court then interrupted and said to the jury, "I'm going to admonish the jury that that's being offered to show the state of the mind and actions of the officer only, not for the truth of the matter."

Detective French then explained how that CAD log led him to meet with Jackson. When he met with Jackson, Detective French remembered that she arrived in a white Dodge Magnum, a car he identified from a photo he took of the car. Detective French verified Jackson was the registered owner of that car. Jackson also told Detective French he should talk to defendant's friend "Munchie," who was later identified as Richard Remijio.

Detective French met with Remijio. He showed Remijio still photos from the IHOP and Pizza Hut robberies; Remijio identified defendant as the person in the photos committing the robberies. Detective French also asked Remijio about the nine-millimeter gun used by the perpetrator in the robberies, and seen in the photo stills. Remijio told Detective French he had recently seen defendant carrying that same gun at a party at Remijio's apartment.

Remijio testified at the trial. He described seeing defendant carry a nine-millimeter gun in his waistband at a party. Remijio also testified that he had seen defendant driving a white Dodge Magnum during the summer of 2010. He identified the car depicted in the photograph Detective French had taken of Jackson's car as the car he had seen defendant driving. The witness to the IHOP robbery testified that the car depicted in the photograph is the same as the car in which he had seen the robber leave after that robbery.

**Verdict and Sentencing**

The jury found defendant guilty on all three counts of robbery. The jury also found true the gun enhancement allegations. Following his conviction, the trial court sentenced defendant to an aggregate term of 23 years 8 months in prison.

*People v. Harris*, 2014 WL 6436234, at *1–3 (Cal.App. 3 Dist., 2014) (unpublished).

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or

application of state law. *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

5

precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

/////

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

6

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded

7

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claim**

Petitioner argues that the trial court erred when it admitted Detective David French's testimony regarding a CAD log which linked petitioner to a car seen leaving one of the robberies. ECF No. 1 at 3.[3] Petitioner contends that this evidence was hearsay, and that its admission violated his right to confrontation under the Sixth Amendment and his right to a fair trial under the Fourteenth Amendment. *Id.* at 5-6. The court of appeal rejected this claim, reasoning:

> Defendant contends the trial court prejudicially erred in admitting Detective French's testimony regarding the CAD log that linked defendant to a white Dodge Magnum similar to the one seen leaving the IHOP robbery. Defendant argues the testimony was hearsay and its admission violated his Sixth Amendment right to confrontation, as well as his Fourteenth Amendment right to a fair trial. Assuming defendant has not forfeited his claims for failing to raise them in the trial court, we agree admitting the evidence was error, but find the error harmless.
>
> **A. Relevancy**
>
> The trial court ruled Detective French's testimony was admissible for a nonhearsay purpose; that is, to explain how Detective French came to focus his investigation on defendant. But, whether the evidence was "offered for a non-hearsay purpose[,] it still had to be relevant to be admissible." (*People v. Lucero* (1998) 64 Cal.App.4th 1107, 1109–1110 (*Lucero* ), original italics.) Because no issue was raised regarding Detective French's investigation, how he came to focus on defendant as a suspect was irrelevant.

---

[3] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

8

In *Lucero*, the defendant was charged with robbing a restaurant. (*Lucero*, *supra*, 64 Cal.App.4th at p. 1109.) During his testimony, the investigating officer explained why he lifted a shoe print from the counter at the restaurant: " 'I asked one of the witnesses what the suspect touched in relation to the counter and the witness pointed to certain areas and pointed to the shoe print ... that was left by the suspect that came into the restaurant.' " (*Ibid*.)

The defendant argued the testimony was inadmissible hearsay; the prosecutor argued she was offering it "for the nonhearsay purpose of 'showing [the investigating officer's] good faith or the reasonableness of his conduct.' " (*Lucero*, 64 Cal.App.4th at p. 1109.) The trial court admitted the evidence for that limited purpose. (*Ibid*.)

The *Lucero* court held that the trial court erred in admitting the evidence because "the jury was not asked to determine whether the police had probable cause to arrest [the defendant.]" (*Lucero*, 64 Cal.App.4th at p. 1110.) Thus, whether the evidence was admitted for a nonhearsay purpose, how the investigating officer came to lift the shoe print from the counter was irrelevant "because it had no tendency in reason to prove any disputed issue of fact in the action. [Citations omitted.]" (*Ibid*.) Nevertheless, the court held that the error was harmless because the trial court gave a limiting instruction regarding the testimony and other evidence connecting the defendant to the crime. (*Ibid*.)

Defendant's claim here presents a similar circumstance. Detective French's testimony regarding the CAD log was admitted for the limited purpose of showing how he came to focus on defendant as a suspect in the three robberies. That testimony was irrelevant. As in Lucero, there was no dispute regarding defendant's arrest or Detective French's investigation. Accordingly, how Detective French came to focus his investigation on defendant "had no tendency in reason to prove any disputed issue of fact in the action," and the testimony should not have been admitted. (*Lucero*, 64 Cal.App.4th at p. 1110; Evid.Code, § 210.)

**B. Harmless Error**

Error in admitting irrelevant evidence is subject to the *Watson* standard of review. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Admitting evidence in violation of a defendant's rights under the United States Constitution is subject to the more stringent, *Chapman* standard of review. (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705].) We conclude the trial court's error was harmless under either standard.

"Since *Chapman*, we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 681 [89 L.Ed.2d 674].) The harmless error inquiry asks: "Is it clear beyond a reasonable doubt that a rational jury would have found the

9

> defendant guilty absent the error?" (*Neder v. United States* (1999) 527 U.S. 1, 18 [144 L.Ed.2d 35].) Here, the answer is yes.
>
> In overruling defendant's objection to Detective French's testimony regarding the CAD log, the trial court advised the jury that the evidence was being admitted "to show the state of the mind and actions of the officer only, not for the truth of the matter." We presume the jury followed this limiting instruction. (*People v. Lindberg* (2008) 45 Cal.4th 1, 26; *People v. Panah* (2005) 35 Cal.4th 395, 492.) Furthermore, the evidence connecting defendant to the crimes for which he was convicted was extremely compelling.
>
> Defendant was identified as the perpetrator by multiple witnesses from the three businesses robbed, both in a photographic line-up during the investigation and again at trial. The robberies at IHOP and Pizza Hut were recorded on videotape; those tapes were shown to the jury.
>
> Defendant's friend Remijio also connected defendant to the robberies. Remijio looked at still frame photos of the recorded robberies and identified defendant as the perpetrator. Remijio testified that around the time of the robberies, he had seen defendant with a gun like the one used in the robberies. He also testified that during the summer of 2010, he had seen defendant driving the white Dodge Magnum and identified the one owned by Jackson as the car he had seen defendant driving.
>
> The prosecution also put on evidence that Jackson was the registered owner of a white Dodge Magnum. And, during Detective French's investigation, defendant admitted being married to Jackson, further connecting himself to a car like the one seen leaving the IHOP robbery.
>
> When considered in total, the CAD log evidence was not the critical evidence linking defendant to the three robberies, as defendant contends. We conclude the trial court's error was harmless beyond a reasonable doubt.

*Harris*, 2014 WL 6436234, at *3–4.

Petitioner presented this claim in his Petition for Review to California Supreme Court (Lodg. Doc. No. 3 (Petition for Review)), which was summarily denied (Lodg. Doc. No. 4 (Denial Order California Supreme Court)).[4]

/////

---

[4] The court notes that the lodged documents include two sets of document number three and document number four. One document numbered three refers to volume two of the reporter's transcript and another refers to the petition for review to the California Supreme Court. Likewise, one lodged document numbered four refers to volume three of the reporter's transcript and another refers to the California Supreme Court's denial order.

10

**A. Applicable Legal Standards**

**1. Confrontation Clause**

The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. CONST., Amend. VI. The clause applies to the states by way of its incorporation in the Fourteenth Amendment's Due Process Clause. *See Christian v. Rhode*, 41 F.3d 461, 465 n.3 (9th Cir. 1994). The clause forbids "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

"A Confrontation Clause violation is subject to harmless error analysis." *Whelchel v. Washington*, 232 F.3d 1197, 1205 (9th Cir. 2000). The Supreme Court has held that:

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

**2. Due Process**

The Ninth Circuit has noted that:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [Citation omitted.], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). A petitioner may, however, obtain habeas relief based on erroneous admission of evidence if he can show that the evidence "rendered the trial fundamentally unfair in violation of due process." *Id*. Nevertheless, "under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair

/////

may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." *Id*.

**B. Analysis**

The court of appeal determined that the admission of Detective French's testimony regarding the CAD was erroneous insofar as it failed to speak to any disputed issue of fact. It went on to hold that petitioner was not entitled to relief on this claim, however, because the error was harmless beyond a reasonable doubt pursuant to the standard set forth in *Chapman v. California*, 386 U.S. 18 (1967). The Supreme Court has held that "[w]hen a *Chapman* decision is reviewed under AEDPA, a federal court may not award habeas relief under §2254 unless the *harmlessness determination itself* was unreasonable." *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (emphasis in original) (internal quotation marks omitted) (citing *Fry v. Pliler*, 551 U.S. 112, 119 (2007)). "[A] state-court decision is not unreasonable if 'fairminded jurists could disagree on [its] correctness.'" *Id*. (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). For the reasons stated hereafter, the court finds that the court of appeal's harmless error determination was not unreasonable.

The court of appeal emphasized that Detective French's CAD testimony "was admitted for the limited purpose of showing how he came to focus on defendant as a suspect in the three robberies." *Harris*, 2014 WL 6436234, at *3. It found, and the record clearly reflects, that the trial court admonished the jury that this testimony was being admitted only to "to show the state of the mind and actions of the officer only, not for the truth of the matter." Lodg. Doc. No. 4 (Reporter's Transcript Vol. III) at 731. The court of appeal was reasonable in presuming that the jury followed this admonition. *See Zafiro v. United States*, 506 U.S. 534, 541 (1993).

The court of appeal was also reasonable in its determination that the evidence of petitioner's guilt was overwhelming. Multiple witnesses identified petitioner as the perpetrator of the robberies. Lodg. Doc. No. 2 (Reporter's Transcript Vol. I) at 58-59, 201-202, 239-240. Video evidence of the robberies was presented to the jury. *Id*. at 169, 226-227. Petitioner's acquaintance – Richard Remijio – testified that he had previously seen petitioner in the car referenced in the CAD. Lodg. Doc. No. 4 (Reporter's Transcript Vol. III) at 671. Remijio also

12

identified petitioner in still photographs of the robberies (*Id*. at 677-679) and testified that he had previously seen petitioner in possession of a gun similar to the one used in the robberies. *Id*. at 680-682. Finally, Detective French testified that the car referenced in the CAD was owned by and registered to Laretha Jackson (*Id*. at 732-734), whom petitioner admitted being married to. *Id*. at 753.

Based on the foregoing, the court finds that the court of appeal's harmlessness determination was not unreasonable and petitioner is not entitled to federal habeas relief. Accordingly, petitioner's motion for a show cause order and evidentiary hearing (ECF No. 30) must also be denied.

## IV. Conclusion

Accordingly, it is hereby ordered that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 21) is denied;

2. Petitioner's motion for a show cause order and evidentiary hearing (ECF No. 30) is denied;

3. The Clerk is directed to close the case; and

4. The court concludes that reasonable jurists would not find this court's assessment of petitioner's claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request with that court.

DATED: February 8, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE